Modesto LOPEZ, Plaintiff,

v.

Joseph CALIFANO, Secretary of Health, Education and Welfare for the United States of America, Defendant.

No. C–78–1300 SW.

United States District Court, N. D. Cal.

Oct. 18, 1979.

Beauzay, Hammer, Ezgar, Bledsoe & Rucka, Salinas, Cal., for plaintiff.

G. William Hunter, U. S. Atty., William T. McGivern, Jr., Asst. U. S. Atty., Chief, Civil Division, San Francisco, Cal., for defendant.

## OPINION AND ORDER REVERSING IN PART AND REMANDING CASE FOR FURTHER PROCEEDINGS

SPENCER WILLIAMS, District Judge.

Plaintiff brings this action pursuant to section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Secretary of Health, Education, and Welfare denying his application for the establishment of a period of disability under section 216(i) of the Act, 42 U.S.C. § 416(i), and his claim for disability insurance benefits under section 223 of the Act, 42 U.S.C. § 423. Plaintiff alleges he was disabled from September 8, 1975, to approximately April 14, 1977.

*FACTS*

Plaintiff was born in Mexico in 1921. He attended school in Mexico for but three years, and an interpreter was necessary at the administrative hearing in this matter because he speaks only Spanish. Plaintiff came to this country to stay in 1961, and since that time has worked at one job—cutting and packaging lettuce.

Plaintiff was injured in a fall in a Salinas lettuce field in September of 1975. He could not finish work that day, and, after

eight minutes on the job the next day, he concluded that his back was too seriously injured and too painful for him to return to work. Plaintiff did not return to his line of work until April 18, 1977, and has apparently continued in that work to the present, but on only a part-time basis.

Plaintiff saw several doctors during his period of alleged disability, including an orthopedic surgeon, and underwent physical therapy. He was given various forms of medication as well. He was awarded workmen's compensation benefits totalling $11,-812.50 for temporary and thirty-eight percent permanent disability.

## ADMINISTRATIVE PROCEEDINGS

Plaintiff filed his application for a period of disability and for disability insurance benefits on May 17, 1976. The application was denied initially and on reconsideration by the Social Security Administration. Pursuant to plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on August 18, 1977. Plaintiff appeared in person, and was accompanied by his attorney and an interpreter. The ALJ, considering the case de novo, rendered his decision on October 19, 1977, concluding that plaintiff was not under a disability as claimed. The ALJ's decision included the following finding:

> Notwithstanding the claimant's impairment, the record shows that by less than 12 continuous months from the date of his accident in September of 1975, the claimant had improved to the extent that he was capable of engaging in substantial gainful activity in the same types of activities that he was doing prior to the accident and in any number of lighter forms of work activity which he could obtain.

ALJ Decision at 5 (Administrative Transcript at 16). No vocational testimony or evidence was entered on the record, and the ALJ did not specify what he meant by "lighter forms of work."

The Appeals Council, after reviewing additional medical evidence submitted by plaintiff, adopted the decision of the ALJ, making it the final decision of the Secretary. In its notice to plaintiff, however, the Council stated, "The Council concurs with the administrative law judge that your condition was not so severe for a 12-month period that it precluded your engaging in lighter work." The Council did not specifically state whether or not it concurred with the ALJ's additional finding that plaintiff could have returned to his previous occupation.

## LEGAL STANDARDS

It is, of course, clear that factual determinations of the Secretary may be upset only if they are not supported by "substantial evidence." 42 U.S.C. § 405(g). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and it must be based on the record as a whole." *Craun v. Califano*, 454 F.Supp. 383, 385 (N.D.Cal.1978). *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Walker v. Mathews*, 546 F.2d 814, 818 (9th Cir. 1976).

As defined in the Act, "disability" means "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In addition, the Act provides that

> an individual . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence . . ., "work which exists in the national economy" means work which exists in significant numbers either in the

region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

██ The initial burden of establishing a prima facie case of disability is on the claimant, and he must show his inability to return to his former work... But once that burden is met, "the Secretary must assume the burden of coming forward with evidence as to the skills of the particular claimant and the availability of specific jobs which correspond with those skills." *Lightfoot v. Mathews*, 430 F.Supp. 620, 621–22 (N.D.Cal.1977). *See Hall v. Secretary of Health, Education and Welfare*, 602 F.2d 1372, 1374–1375 (9th Cir., 1979). The rationale for this shifting of the burden is to effectuate Congress' purpose that doubts are to be resolved in favor of the claimant.

## ANALYSIS

### A. AMBIGUITY OF THE APPEALS COUNCIL ACTION

The Appeals Council's notice to plaintiff is, unfortunately, somewhat ambiguous concerning the ground or grounds upon which the ALJ's decision was upheld. Following a statement that "[t]he Appeals Council has decided that the decision [of the ALJ] is correct," and that "the hearing decision stands as the final decision of the Secretary," the Council briefly reviewed the medical evidence it considered, specifically discussing its analysis of several reports authored by Donald J. Fellow, M.D. The Council then made explicit mention of its concurrence in the ALJ's finding with respect to plaintiff's ability to do "lighter work." As noted above, however, the Council nowhere referred specifically to the ALJ's finding that plaintiff was not disabled from returning to his previous occupation for a continuous twelve month period.

It is possible that, though it mentioned only the one finding, the Appeals Council actually concurred in both the ALJ's finding concerning light work and his finding concerning plaintiff's previous occupation. Upholding either one of these findings, though, would have resulted in denial of the claimed benefits. Because explicit approval of the "lighter forms of work" finding is expressed by the Council, but no such approval of the former work finding is included, it is possible to conclude the Appeals Council adopted the ALJ's decision denying benefits based on the "lighter forms of work" finding alone. If it did reject the ALJ's determination regarding plaintiff's ability to return to the lettuce fields, then this court's review is limited to the one ground with which the Council concurred. This ambiguity is regrettable because the question of whether or not plaintiff could have returned to his former work involves different issues and different burdens of proof from the question of whether or not plaintiff was able to do other kinds of "light" work. Because it is the *final* decision of the Secretary which this court is called upon to review, and because the final decision is the decision of the Appeals Council, the court justifiably could remand this case for clarification by the Council before attempting to review it.

As it turns out, though, such a remand is not necessary in this particular instance. For even if the Council agreed with the ALJ's finding of nondisability with respect to plaintiff's former work, the court concludes, as detailed below, that reversal would be required because there is not substantial evidence in the record to support this finding. Therefore, for the purposes of this opinion, the court will assume the Appeals Council meant to adopt the ALJ's written opinion in its entirety.

### B. ABILITY TO RETURN TO PREVIOUS OCCUPATION: LACK OF SUBSTANTIAL EVIDENCE

#### 1. Summary of the Medical Evidence

Plaintiff has seen several doctors in connection with his back injury. Plaintiff was examined by Donald J. Fellow, M.D., an orthopedic surgeon, on September 24, 1975. The diagnosis was muscle damage and possible injury to two discs. He was given various forms of medication. Dr. Fellow saw plaintiff four more times up to November 20, 1975. Each time plaintiff reported

feeling "a little better" but the examinations continued to show little change in his condition. After the November 20th examination, Dr. Fellow noted that plaintiff was under a "total temporary disability for probably another six weeks." On December 11, 1975, the doctor noted that such disability would continue until at least February 1, 1976.

On January 12, 1976, plaintiff was examined by Stephen D. Storey, M.D. Dr. Storey concluded, "At the present time he is disabled with respect to his usual and customary occupation." On April 24, 1976, plaintiff saw R. L. Jenson, M.D., who observed that plaintiff's straight leg raising was "positive on the right at 70 degrees." This was worse than the initial observation of Dr. Fellow, which was 80 degrees on September 24, 1975.

Plaintiff underwent a program of medication and physical therapy during all or almost all of 1976 under the supervision of Dr. Fellow. On August 13, 1976, plaintiff's physical therapist, L. Richard Stephenson, R.P.T., wrote Dr. Fellow stating that plaintiff was improving and had near normal movements but still complained of "multiple aches and pains from time to time." Stephenson is not a doctor.

Dr. Fellow saw plaintiff again on September 23, 1976, more than twelve months after the accident. The doctor noted that there had been little change in plaintiff's condition since April, and observed that plaintiff could reach forward only far enough to bring his fingertips within seven inches of the floor. In contrast, on November 20, 1975, the doctor had observed that plaintiff could get to within four and a half inches of the floor without pain. Dr. Fellow also saw plaintiff on December 14, 1976, and finally "encouraged" plaintiff to "try working" beginning on December 20, 1976.

Finally, on December 22, 1976, plaintiff saw Dr. Jenson again. Dr. Jenson advised him to "stay off work until approximately January 10."

### 2. Conclusion

No doctor at any time stated his opinion that plaintiff was able to return to the lettuce fields. Plaintiff was specifically diagnosed as disabled with respect to his former work on November 20, 1975 and January 12, 1976, and plaintiff was not even told to *attempt* to return to work until December 1976 or January 1977. In order to conclude that plaintiff was not disabled for a continuous twelve month period, the ALJ must have reinterpreted the medical observations noted by the doctors in their reports, must have rejected most of their specific diagnoses, and must have placed great weight on the physical therapist's report. In addition, he must have ignored the "Work History" form plaintiff filled out as part of the claims procedure and which was made part of the record in this case. In that form, plaintiff describes his lettuce cutter and packer job: it requires him to lift loads weighing between fifty-five and seventy pounds some forty-five times an hour, and loads weighing seventy-five pounds three times an hour; he must walk or stand seven to ten hours a day; and his job requires much bending over.

In defense of the ALJ, he did not have Dr. Fellow's September 23 and December 14, 1976 examination reports, or Dr. Jenson's December 22, 1976 report. Thus, the physical therapist's report was the latest evidence the ALJ had. However, the Appeals Council specifically accepted these items into evidence for the purpose of their deliberations.

The decision that plaintiff was not disabled with respect to his former work is without substantial support in the evidence, and must be reversed. Plaintiff has carried his burden of showing he was disabled with respect to his former occupation between September 8, 1975 (date of the accident) and January 10, 1977 (date Dr. Jenson advised he could return to work).

### C. ABILITY TO DO "LIGHTER FORMS OF WORK": NO EVIDENCE

The conclusion that plaintiff was able to do lighter forms of work is not based on

any evidence or testimony directly showing plaintiff's suitability for certain available forms of work. Rather, it is based on the ALJ's and, presumably, the Appeals Council's interpretation of the medical reports submitted in evidence and on plaintiff's testimony at the administrative hearing. The medical reports do not state any positive ability to do certain work, but they do describe plaintiff's impairment. Testimony and evidence adduced at the hearing likewise fail to indicate any specific work which plaintiff would have been able to perform during the period of claimed disability. The evidence does support quite clearly plaintiff's contentions that he suffered back pain as a result of his accident, and that he experienced difficulty in stooping, bending over, walking, and lifting, although for most of the relevant time period he was able to flex his spine within normal ranges or not too far short of such ranges. The examining doctors certified to plaintiff's industrial insurance carrier that plaintiff was suffering a total temporary disability for the purposes of temporary disability payments. No doctor, however, analyzed plaintiff's ability to do "lighter forms of work," nor was plaintiff asked about such possible work at the hearing.

■ Although the evidence received was not necessarily incompatible with a finding of an ability to do certain forms of light work, once plaintiff carried his burden regarding his inability to return to his previous work the Secretary had the burden of bringing forward some evidence concerning specific skills and capabilities possessed by plaintiff which would allow him to fill particular jobs available in the national economy. *Hall*, 602 F.2d at 1377. *No such evidence was introduced.* This defect is especially glaring where the claimant is in late middle age, does not have more than a third grade education, speaks no English, has been working at only one job for many years, and suffers from a demonstrated physical impairment. *Cf.* 42 U.S.C. § 423(d)(2)(A) ("age, education, and work experience" must be considered in determining disability and nondisability under the Act). Ordinarily, the better method for

the Secretary to carry her burden is through the testimony of a vocational expert. *Id.* 602 F.2d at 1376–1377. While the government might justifiably argue that vocational experts are not required where a claimant's specific skills and training can be shown by other evidence to make him capable of filling specific jobs commonly known to exist in the national economy, if ever there was a case in which specific vocational testimony appeared appropriate, it was this case.

■ Because there is no substantial evidence on the record to support the Secretary's finding that plaintiff was not disabled with respect to certain unspecified lighter forms of work, the decision as it now stands cannot be upheld. Rather than ordering a reversal on this issue, however, the court concludes that a remand for the purpose of allowing the Secretary to present evidence on plaintiff's capacity to perform specific jobs would be in the interests of justice. *See* 42 U.S.C. § 405(g).

*ORDER*

The decision of the Secretary is reversed to the extent that plaintiff was held not to have established his disability to return to his former work between September 8, 1975 and January 10, 1977.

This case is remanded to the Secretary for the sole purpose of determining whether or not plaintiff was also disabled during that period with respect to other forms of work. Any determination adverse to plaintiff on this issue must be based on specific evidence of plaintiff's suitability for particular jobs, and vocational testimony should be a part of any such proceeding.