Jose **MOULES**, Plaintiff,

v.

Margaret M. **HECKLER**, Secretary of Health and Human Services, Defendant.

No. C–83–1155 RPA.

United States District Court, N.D. California.

Oct. 3, 1984.

As Corrected Oct. 17, 1984.

**38**

Robert Taren, Santa Cruz, Cal., for plaintiff.

George C. Stoll, Asst. U.S. Atty., San Francisco, Cal., for defendant.

## ORDER

AGUILAR, District Judge.

Plaintiff brings this action under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3) seeking judicial review of the adverse decision of the Secretary of H.H.S. denying plaintiff's application for disability benefits. Plaintiff moves for summary judgment or, alternatively, to remand this case for further administrative proceedings because the Secretary used improper procedures and standards in reaching her decision. The Secretary makes a cross-motion for summary judgment.

The issue before this Court is whether the Secretary's decision is supported by "substantial evidence." This quantum of evidence has been defined by the Supreme Court as meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" *Richardson v. Perales,* U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). This conclusion "must be based on the record as a whole." *Craun v. Califano,* 454 F.Supp. 383 (N.D.Cal.1978).

Plaintiff is a 53 year old male who was born in the Azores. Plaintiff came to the United States when he was about 44 years of age. He has no formal education and is illiterate in both his native Portuguese and in English. Plaintiff found employment as an agricultural worker, pruning trees and picking and sorting apples. He left work in 1977 when he began to experience pain in his lower back. Two years later, Plaintiff was able to resume work for a period of seven to eight months. However, because of continued pain in his back, hips and legs, plaintiff found it impossible to work. Plaintiff has not worked since May 1981.

Plaintiff filed an application for Supplemental Security Income (S.S.I.) benefits in July 1981 because of alleged severe and debilitating back pain. The Social Security Administration ("SSA") denied plaintiff's application on September 17, 1981, on the grounds that plaintiff did not meet the "disability" requirement. Upon reconsideration, the SSA again denied plaintiff's application on October 7, 1981.

An Administrative Law Judge ("ALJ") conducted a hearing on plaintiff's claim on July 26, 1982. The ALJ concluded that plaintiff was not disabled within the meaning of the Social Security Act ("the Act"). The ALJ found that plaintiff's "medical condition is not severe as it does not significantly limit his ability to perform basic work-related functions." (Tr. 24) On January 19, 1983, the Appeals Council affirmed the ALJ's decision making this the "final decision" of the Secretary of Health and Human Services.

Section 1614(a)(3)(A) of the Act defines "disability" as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). In addition, Section 1614(a)(3)(B) of the Act provides that an individual is determined to be under a disability only if his mental or physical impairment(s) are of "such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any kind of substantial gainful work which exists in the national economy."

Evidence presented on behalf of the plaintiff at the administrative hearing includes medical reports from plaintiff's attending physician and consulting medical

specialists, testimony from the plaintiff himself, corroborating testimony from his wife and neighbor and reports from vocational rehabilitation specialists. The Court reviews plaintiff's condition and plaintiff's ability to resume previous work-related activity.

Plaintiff contends that he has a physical impairment that prevents him from engaging in his previous occupation of sorting apples. The Act defines physical and mental impairment as an impairment that results from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c, (a)(3)(C). Plaintiff produced medical evidence that shows that he has a history of chronic lower back pain. (Tr. 127) Records indicate that plaintiff was hospitalized from February 28, 1977 until March 4, 1977 for febrile illness. (Tr. 132) X-rays taken at that time showed only mild ordinary osteoarthritis. (Tr. 132) Plaintiff's alleged lower back pain persisted and on June 16, 1977, another x-ray was taken. Dr. Kalman Czeuz, a neurological surgeon and plaintiff's attending physician, stated that the x-ray showed "moderate compression of the L5 vertebra." (Tr. 131) According to a consultation report by Dr. William Stearns, dated November 10, 1978, lumbar spine x-rays revealed "osteolytic destruction of the 5th lumbar vertebra with marked compression ..." (Tr. 132) At that time, a physician advised plaintiff to have his condition operatively explored. Plaintiff decided not to heed this advice.

Dr. Cseuz examined plaintiff for his persistent lower back pain on September 20, 1978. The examination revealed that plaintiff was "able to reach to within 3 inches from the floor, with a slower than normal recovery phase and 5 degree extension. Straight leg raising to 80 degrees bilaterally with sciatica ..." [1] (Tr. 131) On No-vember 9, 1978, plaintiff was admitted to the hospital for further evaluation of the "destructive process in the 5th lumbar vertebra." (Tr. 132)

Both Dr. Cseuz and Dr. Stearns tentatively diagnosed plaintiff's condition as suspected osteomyelitis, 5th lumbar vertebra (body L5).[2] (Tr. 131, 132) According to the November 20, 1978 Dismissal Diagnosis report dated by Dr. Charney and Dr. Stearns, a biopsy of the body of the L5 revealed enterococcus. After Plaintiff was treated with prescribed medications, he showed "favorable improvement." On November 20, 1978 he was discharged from the hospital with directions to use a back brace and to continue taking the medications. The report indicates that the "prognosis appears favorable." (Tr. 130)

For approximately the next two years, there was no apparent change in plaintiff's physical condition. Subsequent medical examination reports made by Dr. Stephen Teng on September 4, 1979 and July 28, 1981 indicated no significant change in plaintiff's condition. (Tr. 128, 129) Dr. Cseuz's examination of plaintiff on August 3, 1981 also revealed no significant change in plaintiff's condition. (Tr. 127) Plaintiff still complained of "end-phase low back pain" and displayed difficulty bending and limited movement and agility. (Tr. 127) On the basis of his physical examination of the plaintiff, Dr. Cseuz concluded that "... this patient cannot engage in a physically demanding occupation ..." (Tr. 127) Almost six months later, on January 26, 1982, Dr. Cseuz again examined the plaintiff. He found that the plaintiff's physical condition had deteriorated since his previous examination. Dr. Cseuz noted "a limited range of motion, bending stiffly, with a slower-than-normal recovery phase and bilateral straight leg raising to 45 degrees with accompanying end-phase low back pain." (Tr. 137) Dr. Cseuz also noted that

---

**1.** According to *Dorlands Illustrated Medical Dictionary,* "sciatica" is "a syndrome characterized by pain radiating from the back into the buttock and into the lower extremity along the posterior or lateral back."

**2.** Osteomyelitis is "an inflamation of bone caused by a progenic (pus-producing) microorganism, and may be acute or chronic." *Gray's Attorney's Textbook of Medicine,* 3rd Ed., 2 Chapter 41.

plaintiff's condition became aggravated by activities that required some flexibility and movement. Dr. Cseuz concluded that "[t]heoretically, plaintiff could engage in 'light work' as defined in Guidelines for Work Related Disabilities by State of California ..." (Tr. 137)

Medical reports given by Dr. Cseuz and other consulting medical specialists support plaintiff's subjective complaints of pain and confirm that plaintiff's osteomyelitis would restrict his ability to perform work-related activities. Dr. Cseuz' medical findings indicate that plaintiff may be able to engage only in "light work" due to the pain in his lower back and subsequent physical restrictions that tend to aggravate plaintiff's condition.

Dr. Cseuz' conclusions, as plaintiff's attending physician, are drawn from his own continuous clinical observations and medical findings, and are supported by other medical care specialists. The general rule is that "[w]hile the Secretary is not bound by the opinion of a claimant's treating physician, that opinion is entitled to great weight for it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir.1983). Further, an ALJ is not bound by uncontroverted expert opinion, but he must state clear and convincing reasons for rejecting the evidence. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).

The ALJ did not state specific reasons for rejecting the medical evidence. The ALJ focused instead on Dr. Cseuz's statements regarding plaintiff's prospects in finding available work due to his limited communication skills and his other limited resources. (Tr. 137) The ALJ found that the doctor's conclusions were not based on medical findings and were outside the scope of the doctor's expertise. The ALJ appears to be correct about this. However, it appears that when the ALJ rejected the doctor's opinion about plaintiff's ability to find work, the ALJ also disregarded the doctor's objective medical findings as well.

The ALJ does not refer to any medical evidence in the record that contradicts the physician's opinion.

Plaintiff's testimony—of severe lower back pain and difficulty in bending, walking, lifting and standing for any length of time—also deserves consideration in determining plaintiff's ability to resume previous work activity. *Talifson v. Secretary of Health and Human Services*, 554 F.Supp. 575, 580 (D.MT.1982). Plaintiff's physicians made repeated notations about plaintiff's pain and pain associated with movement. Plaintiff's complaints of chronic back pain are documented in the medical reports and pain is generally known to accompany the condition of osteomyelitis. The ALJ accepted plaintiff's subjective complaints with reservations, stating that they were unsubstantiated by objective medical findings. This is an unsupportable conclusion in this case where there is medical evidence to substantiate plaintiff's complaints of pain and no contrary evidence in the record. *Chism v. Secretary of Health, Education and Welfare*, 457 F.Supp. 547, 557 (C.D.Cal.1978).

Further, the ALJ did not give proper weight to the objective professional findings of vocational rehabilitation specialists Judith A. White and Maria Quintero. When determining the issue of disability, the ALJ must consider not only plaintiff's ability to resume his previous occupation, but "... his age, education and work experience," as relevant factors that indicate plaintiff's ability to engage in "any kind of substantial gainful work which exists in the national economy." (20 CFR § 404.-1561)

Based on objective medical findings and her specialized knowledge of vocational rehabilitation, Ms. White concluded that: "I am quite certain that plaintiff would be unable to return to his former employment with M.V. Pista, either pruning trees in the orchards or even sorting apples." After interviewing plaintiff and taking into consideration plaintiff's physical limitations, age, work experience and lack of communication skills, Ms. White found that the

plaintiff's "transferable skills are very limited, and when you combine the fact that he is 51 years old and is illiterate, in conjunction with his physical limitations of no prolonged standing, sitting, walking and very minimal lifting and carrying, I do believe that Mr. Moules is unemployable in the competitive labor market." (Tr. 147–148)

Consistent with Ms. White's findings, is the report from Maria Quintero, Rehabilitation Counselor for Department of Rehabilitation: "Given today's competitive labor market, the ready supply of able-bodied and qualified applicants available to employers, Mr. Moules possibilities of employment are at best slim." (Tr. 134)

Substantial weight must be given to a report by a vocational specialist who fully considers a claimant's physical limitations, illiteracy and work experience and determines that such individual is incapable of returning to any kind of gainful employment. *Neal v. Schweiker*, 1981 Unempl. Ins.Rptr. CCH 17, 977 (M.D.Tenn.1981). The ALJ should consider the entire record including the expert testimony of vocational rehabilitation specialists in making his final decision.

In addition to the medical and vocational evidence presented in the record, the use of the Listing of Medical-Vocational Guidelines in Appendix 2 is also helpful in a case such as this, "where a person is not doing vocationally relevant past work." 20 CFR § 404.1569 (1983). According to the evaluation guide, Table No. 2, Rule 202.09, where an individual is closely approaching advanced age (50–54), is "illiterate or unable to communicate in English" and is unskilled, that individual is determined as a matter of law to be "disabled." Even though the statutory scheme of SSA contemplates that disability hearings will be individualized determinations based on all evidence presented at the administrative hearing, the Supreme Court has approved of the Secretary's use of and reliance on medical-vocational guidelines. *Heckler v. Campbell*, 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

"The initial burden of establishing a prima facie case of disability is on the claimant, and he must show his inability to return to his former work." *Lopez v. Califano*, 481 F.Supp. 392 (N.D.Cal.1979). The ALJ found that plaintiff "has a condition which would prevent him from engaging in physically demanding activity than those he engaged in as an agricultural laborer." Thus, the ALJ concluded that plaintiff's physical impairment was severe enough to prevent him from doing past relevant work activity. In other words, plaintiff met his burden of establishing a prima facie case. Once this burden is met, "the Secretary must assume the burden of coming forward with evidence as to skills of the particular claimant and the availability of specific jobs which correspond with those skills." *Lightfoot v. Mathews*, 430 F.Supp. 620, 621–22 (N.D.Cal.1977). The ALJ seems to have determined that plaintiff is capable of doing less stressful and demanding work activities than required in his previous employment. However, the ALJ did not refer to any document or evidence to show that other work exists that a person with the plaintiff's particular background and physical condition could perform. Because there is no substantial evidence in the record to support the Secretary's findings that the plaintiff is not disabled with respect to certain unspecified "less physically demanding" work, this Court cannot uphold the Secretary's decision.

The Court finds that plaintiff established that he suffers from a severe physical impairment that prevents him from returning to his previous employment as an agricultural laborer. Thus, in light of the medical evidence offered by the plaintiff, the ALJ's failure to consider relevant determinations made by vocational specialists and the failure to apply the appropriate medical-vocational guidelines, the ALJ failed to meet the burden of showing that plaintiff can perform other work available in the national economy. Therefore, the ALJ's finding that plaintiff is not disabled is not sup-

ported by substantial evidence and must be reversed.

For the reasons stated above, this Court grants the plaintiff's Motion for Summary Judgment and the Secretary is ordered to pay benefits under Title XVI of the Social Security Act in accordance with plaintiff's application.

IT IS SO ORDERED.